IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIE RAY JONES,

    Petitioner,       No. CIV S-09-1735 MCE CHS

  vs.

FREDERICK B. HAWS,

    Respondent.  <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

## I.  INTRODUCTION

    Willie Ray Jones, a state prisoner, proceeds pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Jones stands convicted of offenses in the San Joaquin County Superior Court, case number SF087963A, for which he is currently serving an indeterminate sentence of 25 years to life.

## II.  BACKGROUND

    While the procedural history of this case is lengthy and complicated, the facts of Jones's offenses are not.  Evidence at trial showed that he went to the home of his former girlfriend and, after restraining her when she attempted to flee, punched her in the face and knocked her to the ground unconscious.  He fractured two bones in her face and lacerated her brow.  The attack rendered the vision in her left eye permanently blurry.

1

On July 3, 2003, the District Attorney's Office of San Joaquin County filed an information charging Jones in count 1 with assault with force likely to cause great bodily injury in violation of section 245(a)(1) of the California Penal Code and in count 2 with battery inflicting serious bodily injury in violation of section 243(d).  It was alleged as to both counts that he personally inflicted great bodily injury within the meaning of section 12022.7(e).  It was further alleged for enhancement purposes that he had three prior serious felony convictions ("strikes")  within the meaning of section 667(a); and that he had served six prior prison terms within the meaning of section 667.5(b).

Jones pleaded no contest to count 2 and admitted that he had personally inflicted great bodily injury and that he had suffered one prior conviction.  He was sentenced to a prison term of 12 years.  Jones successfully appealed the conviction to the California Court of Appeal, Third District on the ground that the plea was induced by misrepresentations that he would be able to seek appellate review of a number of his pre-plea motions that were denied.  On April 29, 2005, the court of appeal reversed judgment and remanded the case to the trial court for the plea to be vacated if Jones so elected.  *See People v. Jones*, No. C046119, 2005 WL 995566 (Cal. App. 3rd Dist. 2005).  On July 20, 2005, on Jones's motion, the trial court vacated his plea.

Jones filed a motion for self-representation pursuant to *Faretta v. California*, 422 U.S. 806 (1975).  The motion was granted by Judge James E. Hammerstone on August 29, 2005.

Jones subsequently moved to withdraw his pro per status.  On January 10, 2006, the trial court granted his request and Deputy Public Defender John Lauper was appointed to represent him.

Jones then filed a motion to substitute counsel which was heard on January 30, 2006.  Ruling was deferred to February 27, 2006, when Judge Terrence Van Oss denied the motion.  Judge Van Oss also denied Jones's renewed motion for self-representation and accompanying motion to appoint advisory counsel, stating:

/////

> We have been through this over and over again here. [¶] As I
> indicated the last time Mr. Jones withdrew his request to represent
> himself, he wanted an attorney to represent him, I told him that
> would be the last time.  And I mean it.  We are not going to go
> through this again.  We've been back and forth too many times.
> He now has an attorney.  He indicated if he wanted another
> attorney we'd stick him with the attorney.

(RT at 46-47.)

Jones filed another motion to substitute counsel which was denied on May 12, 2006.  That same day, attorney Lauper declared a doubt regarding Jones's competence to stand trial under section 1368 of the California Penal Code.  The trial court ordered the criminal proceedings suspended.

Medical personnel were appointed to examine Jones.  On June 20, 2006, the trial court found Jones not competent to stand trial.  On July 6, 2006, he was committed to the California Department of Mental Health at Napa State Hospital for a maximum term of three years.  He received 579 days of credit.  Jones consented to the administration of medication.

On December 7, 2006, the court ordered updated evaluation reports regarding Jones's competence and another doctor was appointed to evaluate him.  On January 18, 2007, the court found him competent to stand trial and reinstated criminal proceedings.  That same day, he filed a motion for self-representation; the motion was denied by Judge Van Oss on January 22, 2007.  Trial was set for March 12, 2007.

On February 21, 2007, the matter came before the court on Jones's renewed motion for self-representation.  This time, Judge Peter Saiers heard and granted the motion.  Trial remained set for March 12, 2007 before Judge Van Oss.

On March 8, 2007, Jones filed a motion to disqualify Judge Van Oss.  On March 12, 2007, the day trial was supposed to commence, court convened before Judge Richard Vlavianos.  Trial was delayed since the motion to disqualify Judge Van Oss was still pending before another judge.  The motion was not decided until April 23, 2007, which necessarily delayed the start of trial.  The motion was denied.

1    On April 26, 2007, the matter came before the court again for trial setting.  Jones

2 did not respond to the court's repeated inquiries concerning his readiness for trial, instead

3 attempting to raise other matters each time he was asked.  (Reporter's Transcript ("RT") at 100-

4 01.)  Trial was set for May 1, 2007.  Jones then moved for a continuance.  In denying the

5 continuance, Judge Van Oss noted that Jones had refused to waive time for purposes of the time

6 limit set forth in section 1382(a)(2)(A) of the California Penal Code.  Jones again moved for

7 appointment of counsel or advisory counsel; those motions were also denied.

8    On May 1, 2007, a jury was empaneled to try the case.  The same day, Jones

9 declared he was incompetent to represent himself, but Judge Van Oss found him competent.

10 Judge Van Oss further found that he was competent at the time of his 2003 preliminary hearing.

11    The guilt phase of the trial commenced.  On May 9, 2007, the jury found him

12 guilty of both counts and further found true the allegation of personal infliction of great bodily

13 injury as to each count.

14    In a subsequent bench trial, the court found true two prior serious felony

15 conviction allegations and struck the remaining enhancement allegations.  The court denied a

16 defense motion to strike the prior convictions and sentenced him to state prison for a total term of

17 25 years to live on count 1.  A concurrent term of four years was imposed on the great bodily

18 injury enhancement.  Sentencing on count 2 was stayed in the interest of justice.  Credit in the

19 amount of 3,498 days was awarded.

20    Jones appealed to the California Court of Appeal, Third Appellate District.  This

21 time, the state appellate court affirmed his conviction and sentence in an unpublished decision.

22 *See People v. Jones*, No. C056110, 2008 WL 3878347 (Cal. App. 3rd Dist. 2008).  The

23 California Supreme Court denied a petition for review.  Jones filed multiple petitions for writ of

24 habeas corpus in the California Supreme Court where relief was likewise denied.  The parties

25 agree that Jones has exhausted state court remedies to the extent the grounds presented in the

26 federal petition present the same issues raised in state court.

4

III.  GROUNDS FOR RELIEF

The federal petition sets forth seventeen grounds for relief.  Jones claims:

(A)   He was denied his right to counsel when the trial court refused to reappoint counsel on April 26, 2007 (ground one);

(B)   He was prevented from testifying in his own defense when the trial court did not allow a continuance for retrieval of "notes" on May 8, 2007 (ground two);

(C)   His rights under the Confrontation Clause were violated when the trial court terminated his cross-examination of a witness Flockhart on May 3, 2007 (ground three);

(D)   The trial court erroneously failed to instruct the jury that the prosecution must prove each element of the charges (ground four);

(E)   The trial court erroneously granted his request for self-representation after he was found competent to stand trial (ground five);

(F)   Defense attorney Lauper rendered ineffective assistance of counsel in connection with his right to a speedy trial (ground six);

(G)   Another unnamed defense attorney rendered ineffective assistance in connection with his vacated guilty plea(ground seven);

(H)   Judge Van Oss, the trial judge, was biased (grounds eight and nine);

(I)   The trial court improperly relied on his previous robbery conviction in case A577403 to impose sentence under the "three strikes" law because was he was inadequately represented in that case (ground ten);

(J)   Following trial, the court unconstitutionally imposed a longer sentence than was originally imposed pursuant to the vacated plea (ground eleven);

(K)   Various constitutional infirmities occurred during the bench trial on his prior convictions (grounds twelve, thirteen, and fifteen);

(L)   Appellate counsel rendered ineffective assistance (ground fourteen);

(M)   The trial court erroneously refused to replace the defense investigator on January 10, 2006 (ground sixteen);

and

(N)   He was denied his Sixth Amendment right to a speedy trial (ground seventeen).

For the reasons that follow, these contentions are without merit and the petition should be denied.

IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).  Under the AEDPA, federal habeas corpus relief is also precluded for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

This court looks to the last reasoned state court decision to determine whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred.  *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919.  The state court's factual findings are presumed correct if not rebutted with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Taylor v. Maddox*, 336 F.3d 992, 1000 (9th Cir. 2004).  It is the habeas corpus petitioner's burden to show the state court's decision was either contrary to or an unreasonable application of federal law.  *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

/////

/////

V.  DISCUSSION

A.      Right to Counsel (ground one)

Jones claims he suffered a violation of his right to counsel when the trial court denied his request for reappointment of counsel on April 26, 2007.

A criminal defendant has a right under the Sixth Amendment to the assistance of counsel at all critical stages of the proceedings. *Gideon v. Wainright*, 372 U.S. 335, 344-45 (1963). In *Faretta v. California*, the United States Supreme Court held that a criminal defendant also has a right to knowingly and intelligently waive his Sixth Amendment right to counsel and choose self-representation, even though he may ultimately conduct his defense to his own detriment. *Faretta v. California*, 422 U.S. 806, 834-35 (1975). Ordinarily, a waiver of counsel can subsequently be withdrawn and the right to counsel may be reasserted. *See United States v. Taylor*, 933 F.2d 307, 311 (5th Cir. 1991) ("This court has long held that a defendant who waives the right to counsel is entitled to withdraw that waiver and reassert the right."); *see also Menefield v. Borg*, 881 F.2d 696, 700 (9th Cir. 1989) (rejecting "conception that the defendant's initial decision to exercise his *Faretta* right and represent himself at trial is a choice cast in stone").

Reassertion of the right to counsel following a *Faretta* motion is not unqualified, however, and *Faretta* recognized as much. *See Faretta*, 422 U.S. at 835 n.46; *Menefeld*, 881 F.2d at 700 ("[T]he right to counsel- once waived- is no longer absolute[.]"). In particular, the Sixth Amendment does not protect defendants who abuse it by obstructing judicial proceedings. *See Faretta*, 422 U.S. at 835 n.46 ("The right of self-representation is not a license to abuse the dignity of a courtroom."). A request to withdraw *Faretta* rights and resume with counsel can properly be denied where a necessary continuance would adversely affect the proceedings or where the delay is attributable to the defendant's conduct. *See Taylor*, 933 F.2d at 311 ("A trial court need not countenance abuse of the right to counsel or the right to waive it."); *McQueen v. Blackburn*, 755 F.2d 1174, 1178 (5th Cir. 1985), cert. denied 474 U.S. 852 (trial court must be

1   wary of repeated changes of position on counsel or late requests to change counsel made to delay

2   trial or impede the prompt and efficient administration of justice); *United States v. Studley*, 783

3   F.2d 934, 938 (9th Cir. 1986) ("When the defendant's [S]ixth [A]mendment right to counsel is

4   implicated, [ ] a court must balance several factors to determine if the denial [of a continuance

5   motion] was "fair and reasonable.").

6          Following remand of his case from the court of appeal, Jones made four motions

7   for self-representation (8/24/05; 2/27/06; 1/18/07; 2/21/07), two of which were granted (8/29905;

8   2/21/07); four motions to withdraw his pro per status and to appoint counsel or to appoint

9   advisory counsel (1/9/06; 1/10/06; 2/27/06; 4/26/07), one of which was granted (1/10/06); and

10  two motions to substitute counsel (1/3/0/06; 5/12/06).  Both the trial court and state appellate

11  court reasonably found Jones's repeated motions to be calculated to delay and disrupt the trial.

12  The trial court had ample reason to believe the obstructionist tactics would continue if Jones

13  were permitted to change his mind once again and reassert his right to counsel. Likewise, the

14  state appellate court reasonably made findings of fact that "nothing new or unforeseen had come

15  to light since he had insisted on self-representation," and that "[t]rial was imminent and

16  appointment of counsel, with the inevitable scheduling problems, would likely entail yet another

17  substantial delay." *People v. Jones*, No. C056110, *supra*, at 3.  Rejection of Jones's claim for

18  these reasons was not contrary to, or an unreasonable application of clearly established Supreme

19  Court precedent, nor based on an unreasonable determination of facts.

20          B.      Right to Testify (ground two)

21          Jones next claims the trial court denied him his constitutional right to testify in his

22  own defense.  As support for this claim, Jones references the trial proceedings on May 8, 2007.

23  On that morning, after presentation of the first defense witness, Jones had no other defense

24  witnesses available to testify.  The following exchange occurred:

25              THE COURT:  Since you cannot give me the name of another
                witness to testify, we are going to send Mr. Stewart out to find Ms.
26

1    Deed, if we can.  And, if you want to testify, now is the time to do
     it.

2
     And I will tell you, Mr. Jones, again, that even though you are your
3    own lawyer, you have a 5th [A]mendment privilege not to testify if
     you don't want to.  It is strictly up to you. [...]  Do you wish to
4    testify in this case, or do you not wish to testify in this case?

5    (RT at 546-47.)

6    THE DEFENDANT: Do I wish to testify before we attempt to
     bring in Mrs. Deed, my last witness?
7
     THE COURT: Yes.  We are going to send Mr. Stewart out.  We
8    will give him another shot at her.  And send him out to see if he
     can find her today.
9
     THE DEFENDANT: Then I will testify according to. [sic] Let me
10   hear about the witness, then I will make that decision based upon
     the witness.  I still yet to see the, receive the testimony of Mrs.
11   Deed.

12   THE COURT: If she were here, we would have her testify first.
     She ain't here.  We are not going to waste the rest of this morning
13   while we are looking for her.  Frankly, it sounds like he won't be
     able to find her again.  We will make every effort to locate her.
14   D.A. can't seem to find  her anymore.  We will send your
     investigator out to find her.  And, Mr. [Prosecutor], you have given
15   him all of the information you have about Ms. Deed.

16   [PROSECUTOR]: Yes, I have.

17   THE COURT: He is going to see if he can find her.  If you had her
     on standby or you made arrangements with her, I would let you
18   testify last.  We don't have that luxury now.  Now is the time, if
     you want to testify, now is the time to testify because we are going
19   to bring the jury back in here in two minutes, and then we are
     going to hear the next witness.  If the next witness is you, fine.  We
20   will hear you.

21   THE DEFENDANT: Well, Your Honor, I will ask the record show
     I am objecting to it.
22
     THE COURT: The record preserves your objection
23

24   (RT at 546-48.)  Jones then made a motion for mistrial, which was denied.  The court again

25   asked Jones if he wanted to testify, and Jones responded "... I can't say until I talk to Mrs. Deed

26   and find out what status with Mrs. Deed. [sic]"  (RT at 550.)  The court indicated it would not

1    wait, and Jones stated, "I am not going to testify before I put on my defense." (RT at 550.) The

2    court found that Jones refused to testify:

> I will find a refusal to testify at this time, which is 10:30 in the
> morning. Now next step in this process is to see if you can find
> Mrs. Deed. I am telling you, Mr. Jones, once you tell me you will
> not be testifying, that is the end of it. We are not going to have the
> thing going back and forth. We are not going to come back later
> on and start over again. If you make the decision at this time, I
> want you to understand that is the end of it. I am not going back
> and forth.

8    (RT at 550.) The court instructed Jones to consider the decision during a 15 minute recess.

9    Following the recess, Jones elected not to testify that day.

10           The witness was located and testified the next morning. Following Deed's

11   testimony the court gave Jones another opportunity to testify. This time, he stated he would not

12   testify without his "folder." (RT at 613-14.) Jones requested a continuance which was denied.

13   The court instructed the jury:

> I explained to you before, you may not take into consideration the
> Defendant's failure to testify. It is his decision to testify or not. If
> he does testify, you can consider that like any other witness. But if
> he chooses not to testify, you cannot consider his refusal to testify
> as evidence or discuss it in any way during your deliberations. It
> sounds like that is the Defendant's choice in this case.

18   (RT at 614.) After closing arguments, the court again instructed the jury regarding the right not

19   to testify:

> A defendant has an absolute right not to testify. He or she may rely
> on the state of the evidence and argue that the People have failed to
> prove the charges beyond a reasonable doubt. Do not consider for
> any reason at all the fact that the defendant did not testify. And do
> not discuss that fact during your deliberations or let it influence
> your decision in any way.

24   (RT at 667.)

25           A criminal defendant's right to testify on his own behalf at a criminal trial has

26   sources in several provisions of the Constitution and is one of the rights that is "essential to due

10

1   process of law in a fair adversary process." *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987) (citing

2   *Faretta*, 422 U.S. at 819 n.15. The right is not without limitation, however, and "may, in

3   appropriate cases, bow to accommodate other legitimate interests in the criminal trial process."

4   *Rock*, 483 U.S. at 55.

5          In *Brooks v. Tennessee*, the United States Supreme Court overturned a statutory

6   requirement that a defendant in a criminal proceeding testify before any other testimony for the

7   defense is heard as a violation the defendant's privilege against self-incrimination. *Brooks*, 406

8   U.S. 605, 609 (1972). As the state court recognized on Jones's appeal, however, any analogy to

9   *Brooks* is strained, because Jones was given the opportunity to testify:

10          Here, the only defense witness left in issue was the victim, who
            had already testified on direct at the trial. Moreover, the demand
11          that defendant take the stand was occasioned not by an arbitrary
            rule, but by his failure to produce any other witness, in keeping
12          with his obligation to move the trial forward with ordinary
            diligence. In any event, the trial court recanted and offered him an
13          additional opportunity to testify after every other witness.

14   *People v. Jones*, No. C056110, *supra*, at 3.

15          Based on the trial record, therefore, the state appellate court analyzed Jones's

16   claim in this regard as alleging the denial of a continuance rather than denial of the right to

17   testify: "Thus, the question is whether the court was constrained to grant a continuance and

18   continue the case for another day so that defendant could obtain his notes." *Id*. The state court

19   held the trial court was not so constrained:

20          As defendant concedes, the grant or denial of a continuance is a
            matter that rests in the discretion of the trial court. The court must
21          weigh the equities of the proffered need for delay and the
            advantages gained thereby against the costs of delay. Here
22          defendant claimed to need his written notes to facilitate his
            testimony. This is a simple case involving a few material facts, all
23          within the perception of defendant. Did he chase the victim down
            and punch her savagely in the face? If not, how was she wounded?
24          Assuming that defendant had notes about his testimony, it is
            implausible to assert that they were necessary for his testimony.
25          Even if such notes would be helpful, they could have been
            reconstructed in a few minutes at most. The trial court did not
26          abuse its discretion in denying defendant's request to continue the

11

1    trial to another day on this pretext.

2    *People v. Jones*, No. C056110, *supra*, at 4.

3    The state court's factual determination that Jones was given the opportunity to

4    testify after each defense witness is supported in the record.  Moreover, rejection of this claim

5    based on a holding that the trial court was not required to allow Jones a continuance for retrieval

6    of his "notes" is not contrary to, or an unreasonable application of clearly established federal law.

7    "The matter of a continuance is traditionally within the discretion of the trial

8    judge...."  *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).  Only when a district court's denial is

9    "arbitrary" – e.g., "a myopic insistence upon expeditiousness in the face of a justifiable request

10   for delay" – will it be seen as a denial of due process.  *Id.*; *see also Morris v. Slappy*, 461 U.S. 1,

11   11-12 (1983).  Here, in light of Jones's ongoing efforts to delay proceedings, denial of a

12   continuance to retrieve his "notes" to testify was not arbitrary and not a violation of due process.

13   C.    Termination of Cross-Examination (ground three)

14   In this ground, Jones contends that the trial court unconstitutionally terminated his

15   cross-examination of Ronald Flockhart, a crucial prosecution witness.

16   The prosecutor's brief direct examination of witness Flockhart commenced at

17   9:10 a.m. on May 3, 2007 and comprises eight pages of the reporter's transcript.  (RT at 287-96.)

18   Jones commenced his cross-examination of Flockhart immediately thereafter.  After some cross-

19   examination later characterized by the court of appeal as "belabored, repetitive, [and] replete

20   with long pauses between questions and sustained objections" (*People v. Jones*, No. C056110,

21   *supra*, at 1), the trial court attempted to expedite the process:

22        THE COURT: Mr. Jones, we need to speed this up.  Could you ask
          your next question, please.
23
          THE DEFENDANT: Your Honor, yes, Your Honor.  I am not no
24        lawyer in this.  I am trying to do my best here.

25        THE COURT: Believe me, I know that.  Just please speed it up.
          We can't really wait this long.
26

1   THE DEFENDANT: I understand that.  I don't want to end up
    asking the same question, which I seem to keep running into.
2

3   (RT at 313.)

4           After more questioning comprising approximately 25 pages of the reporter's

5   transcript, the court recessed from 10:36 a.m. to 10:56 a.m.  Afterwards Jones resumed cross-

6   examination, and at one point, possibly following a long pause, the prosecutor interjected asking

7   "Your Honor, is Mr. Jones done?"  (RT at 343-44.)  Jones indicated that he had more questions

8   to ask but failed to ask any for which objections were not sustained.  The court commented

9   further:

10          THE COURT: ...Mr Jones, we do need to speed this up.  This
            witness started 10 minutes after 9:00 this morning.  It is now
11          almost 11:30.  Witness is still on the stand.  We need to proceed.
            Ask the next question.  You can't wait as long as you are waiting
12          between questions.  Please ask the next question.

13          THE DEFENDANT: Your Honor, here is the situation, Your
            Honor.
14
            THE COURT: Your next question.  If you have something to talk
15          about, we will talk about it after the witness has left.  Let's finish
            with the witness.
16
            THE DEFENDANT: I am trying to ask the witness what he
17          originally said at a prior proceeding.

18          THE COURT: So ask him.

19          THE DEFENDANT: He keep saying I don't recall.  I am trying to
            recall his attention.
20
            THE COURT: So ask him a question.
21
            THE DEFENDANT: Okay, just a second, Your Honor, I will.
22
            THE COURT: We waited more than a second now.  Ask him the
23          question.

24          THE DEFENDANT: Now you said that you heard me and the lady
            yelling at each other.  Had we both passed you at that point?
25
            [PROSECUTOR]: Objection, cumulative.
26

                                        13

1    THE COURT: Sustained.  It has been covered ample.

2    THE DEFENDANT: Your Honor, I don't think I asked the
     question yet.

3

4    THE COURT: Let's go into a new area.  The record should reflect
     at this point we have waited another two or three minutes for the
     next question.  I will tell you we are going to finish this witness by

5    noon today.  Whatever we are going to do, we are going to get it
     done in the next half hour.  I will give both sides no more than

6    another half hour with this witness.  Finish it up one way or the
     other.

7

8    (RT at 344-46.)

9            Jones continued his cross-examination of witness Flockhart until 11:57 a.m.,

10   when the court warned him regarding the time:

11   THE COURT: It is now three minutes to noon.

12   THE DEFENDANT: I just got, Your Honor, I believe I am at the
     end right here.  I hate to have to call Mr. Flockhart back and ask

13   him to complete this preliminary hearing deal.  What the People
     have already provided him with.  I kind of like, feel like –

14   THE COURT: We don't need to discuss this now.  I am telling you

15   it is two minutes to noon.  If you have another question, ask him.

16   (RT at 356.)  After two more simple and repetitive questions, the court terminated the cross-

17   examination:

18   THE COURT: It is now noon straight up.  The witness has been on
     the witness stand since 10 minutes after 9:00 this morning.  The

19   Court is going to terminate this examination.  Mr. Flockhart, you
     may be excused.  Thank you very much....

20

21   THE DEFENDANT: I will ask my objection be noted.  I have not
     completed cross-examination of Mr. Ron Flockhart.  I believe that

22   there is, I will let the Court know I will be calling him back,
     subpoena him.

23   THE COURT: Your objection is noted and preserved for the
     record.

24

25   (RT at 357.)  Jones did not suggest the nature of any additional cross-examination that he wished

26   to pursue.

1         The Sixth Amendment to the United States Constitution guarantees the right of an

2    accused in state as well as federal criminal proceedings to be confronted with the witnesses

3    against him.  *Davis v. Alaska*, 415 U.S. 308, 315 (1974) (citing *Pointer v. Texas*, 380 U.S. 400

4    (1965)).  This right encompasses a reasonable opportunity to effectively cross-examine

5    witnesses.  *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986).  Nevertheless a trial court retains

6    wide latitude under the Confrontation Clause "to impose reasonable limits on such cross

7    examination based on concerns about, among other things, harassment, prejudice, confusion of

8    the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  *Id.*

9    at 679.  Thus, "a criminal defendant states a violation of the Confrontation Clause by showing

10   that he was prohibited from engaging in otherwise appropriate cross-examination designed to

11   show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the

12   facts from which jurors... could appropriately draw inferences relating to the reliability of the

13   witness.'" *Id.* (quoting *Davis*, 415 U.S. at 318).

14        On appeal, the state court found no Confrontation Clause violation:

15        Defendant... argues the trial court abused its discretion because
     Flockhart was a critical prosecution witness and, if he had been
16   allowed to continue he "would have inquired further about
     Flockhart's interaction with [the victim] and his relationship with
17   [Thomas] Reed [another eyewitness]." The argument is
     unpersuasive and the contention of error lacks merit.

18        [...]

19        As related, defendant did not suggest any further areas warranting
20   cross-examination at trial. He had already cross-examined
     Flockhart on his relationship with the victim (none) and Reed (only
21   acquainted as coemployee who commuted on the same bus). In
     view of the extensive cross-examination, defendant's improper and
22   repetitive questioning, persistent improper delay in formulating
     questions, and failure to suggest any grounds of examination that
23   remained, the trial court acted reasonably within the range of its
     discretion in terminating cross-examination.

24

25   *People v. Jones*, No. C056110, *supra*, at 4.

26   /////

1    For the reasons set forth by the state appellate court, Jones fails to demonstrate

2  that he was deprived of an opportunity to show a different impression of Flockhart's credibility.

3  The trial court's termination of the cross-examination did not violate the Confrontation Clause.

4    D.    Jury Instruction on Reasonable Doubt (ground four)

5    For his next ground, Jones contends the jury instruction on reasonable doubt was

6  deficient.  The jury was instructed, in relevant part:

7    A defendant in a criminal case is presumed to be innocent.  This
  presumption requires that the People prove the defendant guilty
8  beyond a reasonable doubt.  Whenever I tell you the People must
  prove anything, I mean they must prove it beyond a reasonable
9  doubt.

10    Proof beyond a reasonable doubt is proof that leaves you with an
  abiding conviction that the charge is true.  The evidence need not
11  eliminate all possible doubt because everything in life is open to
  some possible or imaginary doubt.
12
    In deciding whether the People have proved their case beyond a
13  reasonable doubt, you must impartially compare and consider all of
  the evidence that was received throughout the entire trial.  Unless
14  the evidence proves the defendant guilty beyond a reasonable
  doubt, he is entitled to an acquittal, and you must find him not
15  guilty.

16  (RT at 624-25.)  Jones contends the instruction was deficient because it did not explicitly state

17  that proof *of each element of the crime* was required.

18    The Due Process Clause of the Fourteenth Amendment "protects the accused

19  against conviction except upon proof beyond a reasonable doubt of every fact necessary to

20  constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  "[T]he

21  Constitution does not require that any particular form of words be used in advising the jury of the

22  government's burden of proof.  Rather, taken as a whole, the instructions must correctly convey

23  the concept of reasonable doubt to the jury."  *Victor v. Nebraska*, 511 U.S. 1, 5 (1994).

24    Habeas corpus relief for an instructional error is warranted only if the error,

25  considered in context of all the instructions and the trial record as a whole, "so infected the entire

26  trial that the resulting conviction violates due process."  *Estelle v. McGuire*, 502 U.S. 62, 71-72

16

(1991); *see also Henderson v. Kibbe,* 431 U.S. 145, 152-55, n.10 (1977); *Cupp v. Nauhten,* 414 U.S. 141, 146-47 (1973).  The error must also have had a "substantial and injurious effect or influence in determining the jury's verdict."  *Calderon v. Coleman*, 525 U.S. 141, 147 (1998) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

The challenged instruction did not relieve the state of its burden of proof.  As the state appellate court explained,

> Defendant's insistence on use of the term "element" is unwarranted. ... [T]hat term does not have to be used. CALCRIM No. 220 contains the direction that each element must be so proved in telling the jury: "Whenever I tell you the People must prove anything, I mean they must prove it beyond a reasonable doubt." This direction, coupled with the instructions on the offenses, suffices. The court's instructions on the offenses tell the jurors that "[t]o prove that defendant is guilty of this crime, the People must prove the following things" and then the court separately, numerically lists the elements of the offenses. Combined with CALCRIM No. 220, this informs the jurors: The People must prove those elements beyond a reasonable doubt.

*People v. Jones*, No. C056110, *supra*, at 5.  In sum, the jury instructions correctly conveyed the concept of reasonable doubt to the jury and no constitutional error is shown.

E.      Self-Representation and Competency (ground five)

As previously related, on January 18, 2007, Jones was found competent to stand trial and the criminal proceedings against him were reinstated.  That same day, he filed a motion for self-representation which consisted of a five-page document entitled "Petition to Proceed in Propria Persona."  In the document, Jones "certified" to the court that he understood his constitutional rights and the consequences of invoking his right to self-representation by initialing each item and by signing his name.  (Clerk's Transcript ("CT") at 593-97.)  On January 22, 2007, Judge Van Oss denied the motion:

> In order to understand this, I would have to recite the whole history of this case.  I don't have the time right now to recite the history of this case.  It would probably take me a month to recite the history of this case, as a matter of fact.

> Suffice it to say, whoever wants to review this thing will see we have been on again, off again like a light switch with regard to various attorneys and Mr. Jones representing himself and not representing himself.
>
> I remember that I specifically told Mr. Jones quite some time ago that when he asked to be represented by the public defender's office, or agreed to be represented by the public defender's office that that was going to be the last time.  We were not going to reconsider the thing.  That is going to be my position.

(Augmented RT at 36-37.)

On February 21, 2007, however, Jones's renewed motion for self-representation came before the court; this time to Judge K. Peter Saiers.  Jones argued:

> Your Honor, if this is any difference, it would be just creating an appeal process, Your Honor, and instead of creating an appeal process, Your Honor, and have the Court know about the case cited, Faretta versus California, that I do have the constitutional right to do so.  If the Court take the opportunity to take judicial notice of that case and in general, Your Honor, and if it would be to deny my request to represent myself, Your Honor, at this point you're creating an appeal process, and I'm asking that the Court not to do that, you know what I'm saying, and as to grant my motion and to allow me to proceed in pro per.

(Augmented RT at 49.)  Judge Saiers granted the motion.  Jones now claims his constitutional rights were violated because he was not competent to represent himself.

Respondent contends this ground is procedurally defaulted because it was first presented to the state courts in a successive petition for writ of habeas corpus, and denied with citation to *In re Clark*, 5 Cal.4th 750, 774 (1993).  Respondent acknowledges, however, that the Ninth Circuit has not explicitly addressed whether *In re Clark*'s successive petition bar is adequate, and that district courts have differed in their resolution of this issue.

When a federal habeas corpus petition presents both a question of procedural default and a merits issue, the procedural bar question should ordinarily be considered first.  Where the procedural issue presents complicated issues of law, however, and the merits question is easily resolvable against the petitioner, judicial economy counsels giving the merits question

18

1    priority.  *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

2            The record demonstrates that Jones's successful motion for self-representation

3    was knowing and voluntary.  Jones affirmed that he understood his constitutional rights and

4    wished to conduct his own defense without the aid of counsel.  The form he initialed and signed

5    thoroughly advised him of the pitfalls, dangers, and consequences of self-representation.  (*See*

6    Clerk's CT 593-97.)  As discussed, a criminal defendant has a right to "knowingly and

7    intelligently waive his Sixth Amendment right to counsel and choose self-representation, even

8    though he may ultimately conduct his defense to his own detriment."  *Faretta*, 422 U.S. at 834-

9    35.  In this case, no relief is available since Jones made a clear and unequivocal declaration in

10   support of his election to proceed without counsel and because the record shows that he was

11   "literate, competent, and understanding, and that he was voluntarily exercising his informed free

12   will."  *Faretta*, 422 U.S. at 835.

13           F.      Ineffective Assistance by Attorney Lauper (ground six)

14           The Sixth Amendment to the Unites States Constitution and Article I, Section 15

15   of the California Constitution guarantee a criminal accused the right to a speedy trial.

16   Additionally, under section 1382(a)(2)(A) of the California Penal Code, a criminal defendant in

17   California has a statutory right to be brought to trial within sixty days after refusing to "waive

18   time."  Jones claims that attorney Lauper rendered ineffective assistance of counsel at the

19   proceedings on March 6, 2006 and March 7, 2006 when, pursuant to defense counsel's motion

20   and over Jones's personal objection, the trial court continued the trial to June 19, 2006, a date

21   beyond the sixty day period provided for by statute.

22           On January 10, 2006, Jones, proceeding in pro per, waived his right to self-

23   representation, agreed to a continuance of his trial, and waived time for purposes of section 1382.

24   On January 20, 2006, Deputy Public Defender John Lauper was appointed to represent him.  At

25   proceedings on January 23, 2006, both Jones and the prosecution refused to waive time.  Trial

26   was scheduled to commence March 13, 2006, well within the statutory sixty day speedy trial

1  period.

2         During the proceedings on January 23, 2006, Jones filed a motion to substitute

3  counsel which was heard that day; however, the court deferred its ruling to February 27, 2006.

4  On February 27, 2006, the court denied the motion to substitute counsel and also denied Jones's

5  motion to reassert his right to self-representation.  Defense counsel Lauper stated that he had

6  requested but not received the reporter's transcripts of Jones's preliminary hearing and that

7  further investigation might require a DNA test.  Trial remained set for March 13, 2006.

8         On March 6, 2006, defense counsel Lauper filed a motion for continuance which

9  was heard on March 7, 2006.  In a declaration attached to the motion, Lauper stated the case

10  involved "significant legal issues"; the file required "nearly three feet of shelf space"; he had not

11  yet received the reporter's transcripts of the preliminary hearing; he needed to review the

12  transcripts to determine which witnesses to interview and subpoena for trial, to prepare his cross-

13  examination of the prosecution witnesses, to determine whether any pre-trial motions were

14  required; and that he had work to do on other cases.  (CT at 539-40.)  Lauper cited *People v.*

15  *Kowalski*, 196 Cal. App. 3d 174, 178-79 (1987) in support of his argument that Jones's

16  constitutional right to the effective assistance of counsel prevailed over "mandatory statutory

17  time periods."  (CT at 537-38.)  At the hearing on March 7, 2006, Jones again refused to waive

18  time.  The court continued the trial to June 19, 2006, which was outside the sixty day statutory

19  period of section 1382 that commenced when Jones first refused to waive time on January 23,

20  2006.

21         To demonstrate a denial of the Sixth Amendment right to the effective assistance

22  of counsel, a petitioner must establish that counsel's performance fell below an objective

23  standard of reasonableness, and that he suffered prejudice from the deficient performance.

24  *Strickland v. Washington*, 466 U.S. 668, 690 (1984).  Here, Jones fails to demonstrate deficient

25  performance by defense counsel Lauper.  The record reflects that Lauper, having been newly

26  appointed, was forced to choose between obtaining a continuance over Jones's personal objection

20

1  in order to properly prepare for trial, or, in the alternative, proceeding to trial unprepared but

2  within the statutory time period.  Lauper sought the continuance for a valid reason and the

3  decision did not constitute deficient performance.  To the contrary, it may have constituted

4  ineffective assistance for Lauper to proceed to trial inadequately prepared to defend Jones.

5          To any extent Jones alleges that Lauper, finding himself in this predicament,

6  could have simply moved for dismissal of the case based on section 1382, the California

7  Constitution, or the Sixth Amendment, the claim is without merit.  Under California law, defense

8  counsel's request for a continuance over the defendant's objection is treated as a defense time

9  waiver if the defense counsel is "pursuing his client's best interests in a competent manner."

10  *People v. Johnson*, 26 Cal.3d 557, 567 (1980).  Likewise, United States Supreme Court

11  precedent clearly establishes that "delay caused by the defendant's counsel is also charged

12  against the defendant."  *Vermont v. Brillon*, 129 S. Ct. 1283, 1290-91 (2009).  In any event, had

13  Jones not been engaged in obstructionist tactics as set forth elsewhere, Lauper would not have

14  found himself newly appointed and in the predicament posed.  As discussed in subsection (L),

15  *infra*, most, if not all, of the delay in this case was directly attributable to Jones.  This factor

16  would weigh heavily against him, and ultimately carry the day, in any analysis whether his right

17  to a speedy trial was violated.  *See Brillon*, 129 S. Ct. at 1290-91 (citing *Barker v. Wingo*, 407

18  U.S. 514 (1972)).

19

20          G.      Ineffective Assistance by Unnamed Counsel Prior to entry of vacated
                    plea (ground seven)

21          In another ground alleging a speedy trial violation and ineffective assistance of

22  counsel, Jones claims that he raised objections to continuances of his scheduled trial date on or

23  about September 2, 2003 and September 8, 2003, prior to entry of his no contest plea that was

24  later vacated, but that the court granted a continuance to October 6, 2003 and unnamed counsel

25  representing him at that time failed to object.

26  /////

1      As set forth, Jones's conviction was reversed and his no contest plea vacated after

2   his successful appeal and reversal and remand from the state appellate court on April 29, 2005.

3   (CT at 126-30.)  Accordingly, no relief is available because Jones is no longer in custody as a

4   result of that conviction.  *See* 28 U.S.C. §2254(a).

5          H.     Judicial Bias (grounds eight and nine)

6      On December 12, 2005, Jones moved to disqualify Judge Van Oss as biased.  As

7   support for the motion, Jones alleged that Judge Van Oss stated on November 22, 2005, that the

8   case was already more than four and a half years old and that he did not see why the defendant

9   had not already been convicted.  (CT at 390-404, 438.)  Jones additionally cited the denial of

10  some of his motions as evidence of the judge's bias.  Pursuant to state law, Judge Van Oss filed

11  an "Answer to Challenge" in which he denied the allegations and denied that he was biased or

12  unable to provide a fair and impartial trial.  (CT at 439.)  On December 23, 2005, Judge

13  Augustus Accurso denied the motion for disqualification:

14          The court has reviewed the materials in this matter and determined
            the following: Willie Ray Jones has alleged that the Honorable
15          Terrence Van Oss, Judge of the Superior Court of San Joaquin
            County, is biased against him.  In support of this allegation he
16          states that the Judge made various rulings denying his motions and
            a[t] one point the Judge said, "this case is over four-years and a
17          half and don't see why the defendant has not been already
            convicted."  All of Defendant's allegations in reference to the
18          Judge's rulings are curable, if at all, by appeal.  Even if the rulings
            are erroneous, an adverse ruling is inadequate to support an
19          inference of bias.  In regards to the reference of the four and one
            half years, I did not find any portion of a transcript containing this
20          language.  Even if the Judge made that remark it alone would not
            lead anyone to reasonably entertain a doubt that Judge Van Oss
21          would be able to be impartial to Defendant's case.  Thus there are
            no facts from which anyone might reasonably entertain a doubt that
22          Judge Van Oss would be able to be impartial in Defendant's case.

23  (CT at 445-56.)

24      On March 8, 2007, Jones filed a second motion to disqualify Judge Van Oss on

25  the alleged grounds that the judge made a derogatory remark concerning Jones's guilt on

26  November 21, 2005 and that the judge had denied Jones's motions.  Judge Van Oss filed another

"Answer to Challenge" in which he declared under penalty of perjury:

> I am neither biased against this defendant nor unable to provide him with a fair and impartial trial. It would be unduly time consuming to relate the tortured history of this case in this proceeding. However, in general, the history includes the case being some five years old without ever having come to trial, the defendant having been in custody awaiting trial all that time, the defendant having gone through several attorneys and having represented himself off and on for years, and having filed other challenges to other judges. In short, it has been an example of the inherent ability of any legal system to accommodate human beings whose eccentricities are at the margins of experience. The defendant really has no colorable claim on which to base this challenge. No matter what the outcome though, he is unable to stop himself from fighting with every attorney appointed to represent him, every judge assigned to his cases, and anybody else with whom he comes into contact. I probably have as much compassion for him as anybody could, but since I will not give him everything he wants, he will never be happy.
>
> Somebody has to preside over this case because it is too serious just to ignore. Unfortunately, I do not believe anyone else can provide him with a fairer, more just and human adjudication than I, notwithstanding his discontent.

(CT at 679-80.)

On April 23, 2007, Judge Patricia Esgro denied Jones's second motion for disqualification of Judge Van Oss. Judge Esgro ruled that Jones's complaints about Judge Van Oss's alleged derogatory remark were based on the same allegations raised in his December 12, 2005 motion and thus statutorily barred as a repetitive statement of disqualification, and that even if Jones was alleging new grounds for disqualification, he failed to present sufficient evidence of bias.

The Due Process Clause guarantees a criminal defendant the right to a fair and impartial tribunal. *In re Murchison*, 349 U.S. 133, 136 (1955). Judicial bias may be shown by demonstrating the judge's actual bias, or by showing that the judge had an incentive to be biased sufficiently strong to overcome the presumption of judicial integrity (i.e., likely bias). *See Paradis v. Arave*, 20 F.3d 950, 958 (9th Cir. 1994). On habeas corpus review, the relevant inquiry is not whether the trial judge committed judicial misconduct, but rather, "whether the

23

1   state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due

2   process under the United States Constitution."  *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir.

3   1995).  In this case, Jones offers no evidence to support a finding of bias on the part of Judge

4   Van Oss.  The claim should be denied.

5          I.     Sentencing Pursuant to the "Three Strikes" Law (ground ten)

6          Jones was sentenced pursuant to California's habitual criminals, or "three strikes"

7   law (*see* Cal. Penal Code §§ 667(b)-(i), 1170.12(a)-(d)) to a term of 25 years to life.  The

8   sentence was based, in part, on the court's finding that he had sustained two previous convictions

9   for robbery, which are serious felonies within the meaning of the three strikes law.  Jones claims

10  his robbery conviction in case A577402 was improperly used to enhance his sentence because his

11  plea in case A577402 was obtained due to inadequate representation.

12         In *Lackawanna County District Attorney v. Coss*, the United States Supreme

13  Court held:

14         [O]nce a state conviction is no longer open to direct or collateral
           attack in its own right because the defendant failed to pursue those

15         remedies while they were available (or because the defendant did
           so unsuccessfully), the conviction may be regarded as conclusively

16         valid.  If that conviction is later used to enhance a criminal
           sentence, the defendant generally may not challenge the enhanced

17         sentence through a petition under § 2254 on the ground that the
           prior conviction was unconstitutionally obtained.

18

19  *Lackawanna*, 532 U.S. 394, 403-04 (2001) (internal citation omitted).

20         The Supreme Court suggested three exceptions to the general rule of

21  *Lackawanna*: (1) where there was a failure, at the time of the prior conviction, to appoint counsel

22  in violation of the Sixth Amendment and *Gideon v. Wainwright*, 372 U.S. 335 (1963); (2) where

23  a state court had, without justification, refused to rule on a properly presented constitutional

24  claim as to the prior conviction; or (3) after expiration of the time for direct or collateral review

25  of the prior conviction, the defendant obtained compelling evidence that he was actually innocent

26  of the crime underlying the prior conviction.  *Id*. at 404.

None of these exceptions apply to Jones's prior conviction.  The record reflects that Jones was represented by counsel, namely Beatrice Ingram-Young, Deputy Public Defender of Los Angeles County, when he entered his guilty plea in case A577402.  (Supplemental CT at 39-55.)  There was no failure to appoint counsel in violation of the Sixth Amendment. Accordingly, Jones is prevented from claiming that the conviction was improperly used to enhance his sentence in the instant case.  *See Lackawanna*, 532 U.S. at 403-04.

> J.     Imposition of Greater Sentence following Remand and Jury Trial (ground eleven)

Jones also attacks his sentence on the ground that the Due Process Clause allegedly prohibited imposition of a greater sentence than he originally received following the guilty plea that he successfully challenged and had vacated on appeal.  In the vacated plea, Jones pleaded guilty to count two and its associated enhancement in exchange for a sentence of 12 years.  As discussed, following conviction on both counts at trial and true findings on two prior serious felony convictions, Jones was sentenced as a habitual offender to a term of 25 years to life.

Respondent contends that this ground is procedurally defaulted because it was presented to the state courts and denied with citation to *In re Clark*, 5 Cal.4th 750, 774 (1993). Because the claim is easily resolvable against the petitioner, however, the merits will be reached. *See Lambrix*, 520 U.S. at 525.

A government's attempt to punish a defendant for exercising a protected statutory or constitutional right constitutes vindictive prosecution.  *See United States v. Goodwin*, 457 U.S. 368 (1982).  It is well established that a prosecutor violates a criminal defendant's due process rights if he exacts a price for the defendant's exercise of a clearly established right or punishes him for doing what the law plainly entitles him to do.  *See Id*. at 372; *Blackledge v. Perry*, 417 U.S. 21, 28-29 (1974).  No presumption of vindictiveness arises, however, when a sentence imposed after trial is greater than was previously imposed after a guilty plea which the defendant

25

succeeded in having vacated, as the case is here.  *See Alabama v. Smith*, 490 U.S. 794, 801-03 (1989).

Moreover, in the guilty plea that Jones successfully challenged on appeal, he had pleaded guilty to only one of the two charged counts (count two, battery with serious bodily injury).  Following his successful appeal and the appellate court's reversal of that conviction, he rejected the prosecution's plea offers and elected to proceed to trial.  The case proceeded to trial on both counts and all enhancements alleged in the original information.  These events do not constitute vindictive prosecution.  *See United States v. Garza-Juarez*, 992 F.2d 896, 907 (9th Cir. 1993) (even a government's decision to seek *additional charges* based solely on the rejection of a plea bargain is not vindictive prosecution); *United States v. Heldt*, 745 F.2d 1275, 1280 (9th Cir. 1984) ("[B]ringing *additional charges* because the defendant was not willing to plea bargain was permissible prosecutorial discretion.") (emphasis added) (citing *United States v. Allsup*, 573 F.2d 1141 (9th Cir.), *cert. denied*, 426 U.S. 961, (1978)).  Here, the prosecutor did not seek additional charges; he tried the case as it was originally charged.  No presumption of prosecutorial misconduct arises and this claim is without merit.

K.      Court Trial on Prior Convictions (grounds twelve, thirteen, and fifteen)

Following the guilt phase of trial, a separate jury trial commenced on the prior serious felony conviction enhancements and prior prison term enhancements alleged in the information.  On the second day, after the prosecution presented its case to the jury, Jones was advised of and waived his right to have the jury determine whether he had incurred the two prior conviction allegations at issue:

> THE COURT: ... If you agree to [waive jury trial] and you want me to decide the truth of these two priors, the chances are I am going to find they are true, because it has been my experience that the D.A. almost always has the right stuff to prove them.  So the chances are I am going to find them true.  I don't want you to think somehow there is a real good chance you are going to beat the priors, because that isn't true.  Some people call this like a slow plea.  I am probably going to find them true.  I want you to

understand that.  It is almost 10:00.  We need to decide these or do you not?

THE DEFENDANT: Your Honor, I am going to waive the jury on them.

THE COURT: Then I need to go through the whole thing with you just as if you were pleading guilty.  Because, as I say, [ ] this is like a so-called "slow plea."  I will put on the record here, what the changes are.

As I understand it, Mr. Baysinger is going to waive jury and you are going to wavie jury.  And Mr. Baysinger is going to move the Court to dismiss all of the priors except for the July 21st, 1986, robbery, and the August 17th, 1989, robbery.  And he is further going to dismiss the allegations related to those two priors under 667.5 and 667 A.

What that means is that the sentence that you will receive in this case will be 25 years to life.  Now, by agreeing to do this, by agreeing to giving up your right to have a jury trial on this, and, also, by the way, I should probably tell you this, too, Mr. Jones.  Just in case you are wondering, under the three strikes law, if you weren't being sentenced under the strike law, you might be entitled to 50 percent credits.  Actually, I think I'm wrong about that.

You don't get that because of the GBI.  I take it back.  Yeah, those sentences call for 85 percent.  But, with your sentence, under the strike law, you have to serve 80 percent of the sentence.  So, you are only qualified for your 20 percent credits instead of 50 percent credits or 15 percent credits, depending on how you are looking at this.

THE DEFENDANT: That is 80 percent.

THE COURT: You have to serve 80 percent under the strike law.

[PROSECUTOR]: Would he do 85?

THE COURT: Actually it is 85.

[PROSECUTOR]: It is 85.

THE COURT: It is because they are violent crimes, the most credit you will get is 15 percent.

THE DEFENDANT: Can we make stipulation to the 80?

THE COURT: No.  Because I have to sentence you according to what you are convicted of.  If you give up your right to have a jury determine your guilt and you want a court rial, which means I will

be the person to decide the truth of these priors, and I have heard the evidence on behalf of the D.A., I will listen to his argument. I will hear any evidence you want to present. I will listen to your argument, and I will decide. I want to warn you I am probably going to decide they are true because my experience has always been the D.A. has the right documents.

If you give up your right to have a jury decide them, the jury will never hear you testify. You won't present witnesses of your own in front of the jury. You can present them to me, not in front of the jury. You won't have a chance to confront and cross-examine witnesses. The D.A. will call fingerprint experts. You can do it in front of me but not in front of the jury. You also, again, as I say, wouldn't have a chance to testify or present your own evidence before the jury. You can present it to me. You have a privilege against self-incrimination. You have a right to remain silent or testify in your own defense and call witnesses in your behalf. You wouldn't be able to do it in front of a jury. You can do it in front of me. You can refuse to testify in front of me if you want to. Or you can testify in front of me if you want to. You won't be able to do those things in front of the jury. Again, I can tell you some of other things that go along with this.

If you are not a citizen of this country, this kind of sentence may result in you being deported, never allowed in the country, never become a naturalized citizen of this country. This felony, these felonies are going to remain on your record forever. And not only do you have these two robbery charges on your record now, but, of course, now you also have this new 245, 243 GBI. That is another so-called strike against you.

You need to understand that once you get out of prison, if you go out and commit another felony, they are going to give you another life sentence on top of that. You need to understand all of that. And now, keeping in mind – first of all, do you understand everything I just got through telling you?

THE DEFENDANT: Yes, Your Honor. Yes.

THE COURT: Keeping that all in mind what you are giving up here, your right to have a jury decide this, and giving up your right to argue the case to the jury, only be able to argue it to me, given all of that is true, do you want to give up your right to a jury and have a court trial?

THE DEFENDANT: Yes, Your Honor. I am going to waive a jury trial, and we will go with the court trial.

THE COURT: Very good. Court will find Mr. Jones here intelligently, knowingly, freely, waived his right to a jury trial in favor of a court trial. Do the People waive their right to a jury trial

28

1    on this issue?

2    [PROSECUTOR]: Yes.

3  (RT at 736-39.)

4    After the jury was dismissed, the court struck the remaining allegations pursuant

5  to the People's motion.  (CT at 975-77; RT at 750-51.)  The proceeding continued:

6    THE COURT: All right.  We are back on the record now after a
     recess in the matter of People versus Jones.  Mr. Jones is present,
7    as is the D.A. and the jury has now been discharged.  And now we
     are continuing with the court trial on the subject of the two priors,
8    two remaining priors.

9    Mr. Jones, is there anything you would like to present to the Court
     by way of testimony or documents or any other kind of evidence
10   you want to present?

11   THE DEFENDANT: Yes, Your Honor.  I would like the record to
     reflect that I am objecting to the Judge trial and relief for the
12   regular jury trial.  For the record, to reflect it is unconstitutional to
     waive the judge trial – and you waive of jury trial and have the
13   judge trial [*sic*].  That the proper advisement was not presented.
     Ask the record to reflect that there was a lack of assistance of
14   counsel.  I wanted to raise that, as far as counsel is concerned.
     That I was uncounseled when I waived that right, and I was entitled
15   to have counsel at that time.

16   So, the record should reflect that my objection should be noted that
     that is regarding to this case here at hand, Your Honor, as the
17   Court, in my argument, remain that I have not received any
     document regarding to the proof of the priors [*sic*]....

18

19  (RT at 752.)

20    Jones then gave his testimony and argument.  The court reviewed the

21  documentary evidence and found true the prior conviction allegations.  Jones now claims the trial

22  court made three constitutional errors in these sentencing proceedings.  He contends the court

23  erroneously denied his motion to dismiss or strike prior convictions and refused to allow him a

24  continuance or witnesses (ground 12); failed to advise him of his constitutional rights to confront

25  and cross-examine witnesses (ground 13); and erroneously denied his requests for re-

26  appointment of counsel (ground 15).

1          Respondent contends that grounds 12, 13, and 15 are procedurally defaulted.

2  Because the claims clearly do not warrant relief, however, the merits of each will be addressed in

3  turn.  *See Lambrix*, 520 U.S. at 525.

4          For ground 12, Jones contends that he moved to dismiss or strike his prior

5  convictions on June 18, 2007, but that the trial court abused its discretion in denying the motion

6  on that day and further erred by preventing him from calling witnesses in relation to the matter

7  and denying a continuance to 1:30 p.m. that afternoon.  June 18, 2007 was the day that Jones's

8  case came before the trial court for pronouncement of judgment.  Aside from giving the

9  conclusory allegations related above, Jones makes no attempt to support this claim with

10  necessary facts such as why he needed the continuance or how witness testimony would have

11  been helpful to the motion that was denied.  The claim could be denied on this basis alone. *See*

12  *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported

13  by a statement of specific facts do not warrant habeas relief."); *Boehme v. Maxwell*, 423 F.2d

14  1056, 1058 (9th cir. 1970) ("[a]llegations of fact, rather than conclusions, are required").

15          Regardless, it is also apparent that the claim is not cognizable on federal habeas

16  corpus.  Trial courts in California have statutory discretion under Cal. Penal Code § 1385(a) to

17  dismiss prior serious felony convictions alleged for sentence enhancement purposes.  *See People*

18  *v. Superior Court (Romero)*, 13 Cal.4th 497 (1996).  Absent fundamental unfairness, however,

19  federal habeas corpus relief is not available for a state court's misapplication of its own

20  sentencing laws.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Brown v. Mayle*, 283 F.3d 1019,

21  1040 (9th Cir. 2002), vacated on other grounds, 538 U.S. 901, remanded to 66 F. App'x 136 (9th

22  Cir. 2003) ("The district court correctly concluded that this state law [*Romero*] claim is not

23  cognizable on federal habeas review."); *Miller v. Vasquez*, 868 F.2d 1116, 1118-19 (9th Cir.

24  1989) (claim that prior conviction was not a "serious felony" under California sentencing law not

25  cognizable in federal habeas corpus proceeding).  No fundamental unfairness appears and Jones

26  is not entitled to relief.

1    In ground 13, Jones contends he was not fully advised of his rights to confront and

2    cross-examine witnesses before he waived a jury trial on his prior convictions.  The record as set

3    forth above clearly and adequately rebuts this claim.  No further analysis is necessary.

4    In ground 15, Jones claims that the trial court unconstitutionally denied his

5    request to reassert his right to representation by counsel.  Upon review of the record of the June

6    18, 2007 proceeding, however, it does not appear that Jones made a motion to reassert his right to

7    counsel on that day.  To the extent Jones did make such a motion, or to the extent his claim is

8    premised on the trial court's previous denial, the claim is without merit.  As discussed in

9    subsection (A), *supra*, the Sixth Amendment does not protect defendants who abuse it by

10   repeatedly and alternately seeking self-representation, re-appointment of counsel, and

11   substitution of counsel for the purpose of delaying or obstructing judicial proceedings.  Before

12   Jones's motion to proceed in pro per was granted, he specifically certified to the court that he

13   understood it would be necessary for him to "conduct all matters after trial," including

14   "representing [himself] at the time of probation and sentence hearing in the event of a

15   conviction," among other things. (CT at 593-96.)  The trial court's denial of Jones's motion to

16   reassert his right to counsel did not violate the Sixth Amendment.  *See Faretta*, 422 U.S. at 835

17   n.46.

18        L.    Ineffective Assistance of Appellate Counsel (ground fourteen)

19   Jones claims appellate counsel rendered ineffective assistance by failing to raise

20   on direct appeal a claim that the trial court did not give him "*Faretta* advisements."  Jones fails

21   to demonstrate the counsel's assistance fell outside the "wide range of professionally competent

22   assistance," or that he suffered prejudice.  *See Strickland*, 466 U.S. at 688, 649.  As fully set forth

23   in addressing Jones's ground 1 (*see* subsection A, *infra*), his *Faretta* rights were not violated.

24   Jones certified to the court that he understood his constitutional rights and the consequences of

25   invoking his right to self-representation by initialing each particular warning and by signing his

26   name.  (CT at 593-97.)  There was no reasonable probability that a *Faretta* claim would have

31

1    been successful on appeal.  Accordingly, appellate counsel's failure to raise the issue does not

2    constitute ineffective assistance.  *See Jones v. Smith*, 231 F.3d 1227, 1239 n. 8 (9th Cir. 2000).

3                  M.      Denial of Motion to Replace Investigator (ground sixteen)

4                  On January 10, 2006, the trial court conducted an in-camera hearing into Jones's

5    complaint that his investigator had refused to comply with his requests.  (*See* RT 1/10/06 at 1-

6    20.)  The court declined to appoint another investigator.  Jones now claims the trial court

7    erroneously denied his request for a new investigator.

8                  This claim is without merit.  Later that same day, the court granted Jones's motion

9    to withdraw his pro per status and to appoint counsel.  Deputy Public Defender John Lauper was

10   appointed.  Subsequently, defense counsel neither complained regarding the investigator's

11   performance nor requested that the investigator be replaced.  In any event, a search reveals no

12   Supreme Court precedent clearly establishing that a pro per criminal defendant has a right to an

13   investigator.  *See Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005) ("... *Faretta* says nothing about

14   any specific legal aid that the State owes a *pro se* criminal defendant.").  No relief is available.

15                 L.      Sixth Amendment Right to Speedy Trial (ground seventeen)

16                 For his final ground, Jones claims a violation of his Sixth Amendment right to a

17   speedy trial.  The Sixth Amendment to the United States Constitution guarantees the accused in a

18   criminal prosecution the right to a speedy trial.  The speedy trial right is amorphous, slippery, and

19   necessarily relative.  *Brillon*, 129 S. Ct. at 1290 (internal quotations omitted).  "It is consistent

20   with delays and dependent upon circumstances."  *Id.* (internal quotations omitted).  In *Barker v.*

21   *Wingo*, 407 U.S. 514, 522 (1972), the Court refused to "quantif[y]" the right "into a specified

22   number of days or months" or to hinge the right on a defendant's explicit request for a speedy

23   trial.  *Barker*, 407 U.S. at 522-25.  Rejecting such "inflexible approaches," *Barker* established a

24   "balancing test, in which the conduct of both the prosecution and the defendant are weighed."  *Id*.

25   at 529-30.  "[S]ome of the factors" that courts should assess in determining whether a particular

26   defendant has been deprived of his right include "[l]ength of delay, the reason for the delay, the

1  defendant's assertion of his right, and prejudice to the defendant." *Id*. at 530.

2          Considering these factors and the record of this case, it is clear that Jones's Sixth

3  Amendment right to a speedy trial was not violated.  Trial was set for March 13, 2006, which

4  was within the sixty-day speedy trial period provided for by California statute.  Trial was then

5  rescheduled to June 19, 2006, on defense counsel's motion.  "Because 'the attorney is the

6  [defendant's] agent when acting, or failing to act, in furtherance of the litigation,'" this delay is

7  charged against Jones.  *See Brillon*, 129 S.Ct. at 1290-91 (excluding from computation of time

8  limit continuances and delays caused by defendant or defense counsel) (quoting *Coleman v.*

9  *Thompson*, 501 U.S. 722, 753 (1991). The suspension of criminal proceedings from May 12,

10  2006 until January 18, 2007 was also attributable to Jones since this was the time period that,

11  having been found incompetent to stand trial, he was committed to the Department of Mental

12  Health.  Jones's conduct in switching between self-representation and appointed counsel and the

13  multiple continuances he sought also contributed substantially to time delays in this case.  Jones

14  fails to identify any period of delay attributable to the government.  The state court's rejection of

15  this claim was not contrary to, or an unreasonable application of federal law, nor based on an

16  unreasonable determination of facts.

17                          VI.  CONCLUSION

18          For all of the foregoing reasons, the petition should be denied.  Pursuant to Rule

19  11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate

20  of appealability when it enters a final order adverse to the applicant.  A certificate of

21  appealability may issue only "if the applicant has made a substantial showing of the denial of a

22  constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed, a substantial showing

23  of the denial of a constitutional right has not been made in this case.

24          Accordingly, IT IS HEREBY RECOMMENDED that:

25          1.  the petition for writ of habeas corpus be denied; and

26          2.  a certificate of appealability not issue in this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  Any reply to the objections shall be filed and served within seven days after service of the objections.

DATED: September 23, 2011

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE

34